The next matter on the docket is People of the State of Illinois v. Daniel Poole, Clause 5-10-98. Are you ready, Mr. O'Neill? Thank you, Your Honors. May it please the Court, Counselor. My name is Lawrence O'Neill, and I represent Daniel Poole in this cause. This is a direct appeal from a jury trial where Mr. Poole was found guilty of two counts of residential burglary. Briefly, the facts from the trial are that two homes were burglarized in Randolph County in May 2009. Later that night, police stopped a vehicle driven by Dustin Middendorf. Ashley Jones and Poole were passengers in the vehicle. Poole was searched, and a gun was found on his purse. Police searched the rest of the vehicle and found many items that were stolen from the two burglarized homes. Middendorf and Jones pled guilty before Poole's trial and testified at Poole's trial that Poole was with them and assisted them in the residential burglaries. Poole presented an alibi defense. It was corroborated by 50-year-old Misty Lang and Ashley Pegg, who testified that Poole was at Lang's farm doing chores during the time of the burglary. I intend to argue arguments one and two. Regarding both arguments, because the issues were not preserved below, this court should review the issues as plain error. First, regarding argument two, Mr. Poole argues that he should receive a new trial because the state had properly elicited testimony from Middendorf and Jones that they had made prior statements to Officer Kroll that were consistent with their trial testimony in which they implicated Poole as their accomplices in the burglaries. Generally, it is error to present evidence that a witness made a prior consistent statement to bolster the credibility of the witness's trial testimony. Let me make sure I understand this factually. This was done during the prosecutor's direct examination. Is that right? Correct, Your Honor, it was. It wasn't in response to anything that came up on the cross? No. No, that's correct, Your Honor. Okay. Again, the state elicited this evidence of the prior consistent statements for the very reason to bolster the tarnished credibility of these witnesses. It is important to note that these witnesses were the main witnesses for the stated trial. The context for the elicitation of these prior consistent statements involves the problems with the credibility of Jones and Middendorf. First, Middendorf had initially flat-out lied to the police on the day of his arrest and claimed that Mr. Poole had borrowed his car during the day and returned later in the day with the stolen items. Then, after Middendorf testified at trial, and then he initially admitted that he initially lied to the police and testified that Poole was with him during the burglarizing of the home, the prosecutor then elicited from Middendorf testimony to bolster his credibility to overcome Middendorf's admitted lie in his direct testimony. The prosecutor asked Middendorf if he had previously told Officer Trull what he is testifying to today. Middendorf answered yes. The prosecutor then asked Trull if Officer Trull had made a report about his statement. Middendorf answered yes. And finally, the prosecutor asked, and that's pretty much what you're telling us today, correct? And Middendorf again answered yes. Because the prosecutor knew that Middendorf had a credibility problem, he elicited this testimony from Middendorf that he made a prior statement to bolster his floundering trial testimony. There was no other reason to elicit this testimony from Middendorf. The statement acknowledges that this was the reason that the prosecutor brought out testimony regarding Middendorf's prior consistent statement. This was improper. Officer Trull did not testify about the statement that Middendorf initially had told him. And again, Middendorf was the state's main witness. In addition, the prosecutor used the same approach with Ashley Jones. She had credibility problems as well related to her drug addiction. And she admitted that she had taken drugs for days before the burglary and was high at the time. And the prosecutor repeated his approach with Jones, asking whether direct examination, what are you telling me? Did you make a statement to Officer Trull? Yes, Jones says. It will be in his report. Yes, Jones replies. And again, stamp approval on this prior consistent statement by connecting it to a police report that Officer Trull purportedly made about the statements. The police report was never, Officer Trull did not testify to the police report and there was no presentation of any of that report. In all, because these witnesses were very flawed, drug problems, criminal records, accomplices, and the evidence in this case was very close, the elicitation of these prior consistent statements was highly prejudicial and denied Mr. Poole a fair trial. For this reason, on this argument, Mr. Poole asked Your Honors to vacate and reverse his conviction and remand the case for a new trial. Next, regarding argument two, excuse me, argument three, where Poole argues that he should receive a new trial because the prosecutor made repeated references in closing argument regarding Poole's post-arrest silence, violated his right to remain silent, improperly shifted the burden of truth to defense, and diminished the presumption of innocence. The problems with the prosecutor's arguments relate to three constitutional categories that are related and overlap. First category relates to comments regarding Poole's failure to tell the police's story upon his arrest and that he chose not to speak with the police without his attorney present. This violates the rules set out in Doyle v. Ohio that precludes the prosecutor from commenting on a defendant's exercise of his right against self-incrimination and the right to have an attorney present when he speaks during a custodial interrogation. Second, the prosecutor argued that Poole's failure to explain his story to the police before the trial was inconsistent with how an innocent person would act in his position. State contempt, the defendant himself wanted to explain his post-arrest silence. Well, that's true, Your Honor. In direct examination, Poole did refer to the fact that he has been trying to tell his story. He has been trying to tell that story, so that is correct. But I submit to this Court that the prosecutor's closing arguments went way beyond any type of reasonable or proper cross-examination regarding Mr. Poole's statement during direct testimony. And the Doyle argument is just one part of my argument regarding the prosecutor's improper statements. Perhaps even more prejudicial and beyond the pale were remarks regarding the presumption of innocence and the burden of proof for us with the State. In that context, I'd like to read the improper closing remarks by the prosecutor to make that point. Now, if you're accused of doing something wrong, are you going to sit in an East St. Louis jail? Now you're talking about a 5'9'' white person in an East St. Louis jail. Now, if you're innocent, what's the first thing you're going to do, the first chance anybody talks to you? Hey, I don't know what the heck is going on. I want to tell everything. I don't care who's there. I'm innocent. I want to tell everything. Didn't do it. Not until December does he finally say I better talk to somebody. Do you think an innocent person is going to sit for seven or eight months in a jail when he had nothing to do with this? I, as an innocent person, wouldn't sit in any jail for seven, eight minutes, much less than seven or eight months. Time after time, police officer after police officer, do you want to say anything? No, not unless I have my attorney. And that right there tells you that he should be jumping up and begging, give me something. I need to talk to you. But it didn't happen. Again, these arguments can be categorized in three different, regarding three different fundamental constitutional principles. Set out one, the Doyle principle regarding a defendant's right to remain silent and have an attorney present during interrogation. The right, the presumption of innocence. The prosecutor four times in his closing arguments argues that Mr. Poole's failure to speak with the police is inconsistent with the conduct of an innocent person. And finally, the state shifts the burden to the defendant. When obviously the fundamental constitutional principle is that the burden always remains with the state. These statements, these closing remarks are so beyond the pale that Mr. Poole was denied his right to a fair trial. And he asked your honors to reverse his conviction based upon the prosecutor's improper remarks. And it's important to note that considering the plain air doctrine, where the evidence is closely balanced, I can briefly mention in that context my first argument regarding reasonable doubt. This was a close case. Again, the witnesses Middendorf and Jones were highly flawed witnesses in every regard. And Mr. Poole presented solid alibi defense. And those alibi defense witnesses were some connected to the defendant, right? Unlike Mr. Yalali, who had no connection to the defendant and identified him down at a time which would be inconsistent with the time of his alibi witnesses. You're correct in regarding John Gallo, your honor. He did testify that he saw that he in court identified Mr. Poole as the person that he saw with Middendorf near a creek near the location of the homes of the burglar. That's true. But Yalali, he was unable to identify Mr. Poole out of the photo array shortly after the burglaries occurred, even though he was able to identify Mr. Middendorf out of the photo array. So John Yalali, I can't say that he didn't provide any support for the state's case. But in the broader context, Ashley Lang, Misty Lang, excuse me, who Mr. Poole was living with at the time, who provided an alibi defense, had really a peripheral relationship with, not a very close relationship with Mr. Poole. Mr. Poole, can I just finish that one? Just finish it. Mr. Poole was a friend of Ashley Lang's son. You'll have an opportunity for a rebuttal, Mr. O'Neill. All right. Ms. Sharma. Good morning. I'll follow the same order as co-counsel and begin with the prior consistent statements. The statements themselves, it was simply one statement, and it was, what you told us today is pretty much what you told Detective Krinkle, correct? And each, Ashley and Dustin, responded yes. That's the extent of it. Assuming that there was error. And that was evidence of a prior consistent statement. Right. And you're not allowed to do that. And you're not allowed to do that. And so move on straight to the plain error analysis, whether this was harmless error or reversible error. And the people's brief on page 17 goes into the six factors that we use to determine harmless or reversible and argue that every single one of those factors is resolved in favor of the state. For one thing, the prior consistent statements weren't reiterated against closing arguments. They weren't specific. They were cumulative. Was this what you said before? Yes. It was open and shut. And moreover, I would depart from defense counsel's statements that this was the only thing that bolstered the credibility of these two alibi witnesses. That without, sorry, these co-defendants, that without it, they were completely unbelievable. As we brought up, John Yalalay testified that he had seen the defendants down by the creek with Dustin. Moreover, he testified that he saw them there at noon. This undercut the alibi witnesses who the defendant lived with, who said that they had seen him at home all day doing house chores until 3.30 p.m. And that he didn't leave the house until 3.30 when Dustin came, and that was after the burglaries had already been committed. Now, certainly the jury could look at that testimony of Mr. Yalalay and say, look, he is a neutral witness. He has nothing to gain from this. And he was fairly positive that he saw the defendant that day at the creek. He positively identified the car. He said it was a Ford Taurus. It was a Ford Taurus. He had a good 30 seconds to look at them. He was a passenger in a truck driving by, so his attention wasn't disturbed. And counsel mentioned that he hadn't been able to pull defendant in the initial photo array. And that was brought up during the trial, and he said that, well, in the photo array, his hair had been shaved and buzzed down, and initially it was a lot longer, and it was difficult to discern him. By the time trial rolled around, hair had grown back, he said, this is absolutely the man that I saw. So with those factors in mind, the people would argue that the prior consistent statements were a harmless error, that even if that two-line dialogue had been omitted from the trial, the defendant would have still been found guilty. I'll move on then to the post-arrest silence. The interesting point about this is the defendant is the one that opened the door to the testimony. And on his direct examination, and that's at 445 and 452 of the record, for whatever reason, he said, this is the first time I'm telling you this story because nobody would talk to me, nobody would listen to me. I tried to talk to the detectives, they didn't want to hear it. He can hardly complain then when prosecutor on cross-examination says, well, wait a minute, that's not true. Didn't Detective XYZ try to talk to you, and didn't you say, no, I want my lawyer, I don't want to talk? Okay, that would be, on cross-examination, you had an opportunity to talk to this detective and you didn't. That would rebut what he opened the door on. But isn't there a difference between that and then going on and saying, an innocent person wouldn't do this, an innocent person wouldn't use his right to remain silent, et cetera, et cetera, et cetera, which is what the prosecution argued in the closing argument. Well, I would argue that in closing arguments, that those statements were still couched on the direct testimony, taken in the context of what the defendant stated in closing, and that was 499 of the record. Prosecutor said, look, the defendant would have you believe that for eight months, nobody would talk to him. He tells you that he was sitting in jail, no one would talk to him, and then he goes on to say, well, if I were an innocent man sitting in a prison cell, I wouldn't just sit there quietly. All of those statements were couched on the direct testimony, and I would hope that the jury knew that. Within this context, the prosecutor specifically referred back to the defendant's own statement. And if you look at defense counsel's closing, he comes back and brings it out, too, and says, look, the defendant wanted to talk to people, nobody would listen to him, the state is trying to shut him down and keep him quiet. Defense counsel said that in closing. So it was very much all these statements on his post-threat silence and his request for an attorney were in the context of impeaching his testimony that he wanted to make exculpatory statements early on. No one would let him. They were not introduced for the purpose of impeaching the exculpatory story itself. And I think reading the record and closing arguments, that was clear to the jury. Is that your argument, that it wasn't a prior inconsistent statement, it was a prior inconsistent silence? Right. And if the defendant hadn't, clearly if the defendant hadn't been the one to bring this up and the prosecutor had talked about how this is the first time we've heard this, then there's no question that's a Doyle violation. But here in this case, I think it's similar to the case I did by the people on page 27, People v. La Cour, where defense counsel on fact examination of the investigating officer said, well, didn't the defendant try to give you his exculpatory story early on? And the officer responded, no, he didn't want to talk at all. Well, the second district said, well, that's not him impeaching the exculpatory story. He's just answering your question. He's just responding to what you're saying, that there was an exculpatory story offered earlier, but he's saying it didn't exist. I would analogize that with this case where the defendant's offering this statement that I was trying to tell people what happened, but I didn't. And it was similar in that regard. Because this is another issue that is a beautiful plain error, there is a lack of prejudice. There is not reversible error here where the jury was aware that the context of these statements were in response to the defendant's own testimony. And I'll briefly go back before concluding to the sufficiency argument. The defendant was found with one of the stolen guns in his shoe. So to argue that this entire case is built on the testimony of these two drug-addicted accomplices isn't true. He was in a car full of stolen goods hours after the burglary with two confessed burglars with a stolen gun in his shoe. He was not charged with possession on the weapon? Your Honor, I'm not sure. I was looking for it and I couldn't see it. Oh, I'm not sure. I don't believe so. I believe that it was just the burglaries that he was, at least that eventually went forward to be prosecuted. As a rational juror, I certainly found that this story that, well, I bought the gun from Dustin was just a convenient way to explain away a recently stolen item found on your person. By itself, sure, having a stolen weapon on you isn't proof in itself of burglary, but it is certainly very inculcatory evidence. Are there no other questions? Thank you, Ms. Sharma. Rebuttal, Mr. O'Neill? Your Honor, regarding the harmless error argument by counsel in the context of the prior consistent statements and the burden of the prosecutor's closing argument, the reason that this was not harmless regarding the prior consistent statements is that Mittendorf and Jones were the two main witnesses against Poole. They were essential to the state's case, and they were flawed witnesses, and Mittendorf did not understand that he had lied initially, so his credibility was extremely compromised when he testified that Poole was actually with him when he committed the burglaries. Thus, the bolstering of that tarnished credibility was significant in the state's presentation of the case, and without rehabilitating or without Mittendorf testifying against Poole, there was no – the evidence simply could not have carried the weight of the statement. For proof, Mittendorf and Jones were crucial to the state's case, and the state bolstered their credibility with these prior consistent statements. Thus, the error was not harmless. Regarding the prosecutor's closing argument, I'm not conceding the Doyle argument or the problem with the defense attorney bringing out in Poole's direct examination that he tried to speak with the police before, but even if you set Doyle aside, the prosecutor's argument focused primarily on Mr. Poole's failure to act like an innocent person would have in this situation. A five-foot-nine white person in jail, he would have told – an innocent person would have told this type of story. He didn't do it. He diminished his presumption of innocence and went on and on, but the defendant should have had the opportunity to prove his innocence, which shifted the burden away from the state. So even if we step aside from Doyle, there are many cases where a prosecutor's improper remarks regarding simply shifting the burden of proof to the defendant and diminishing the presumption of innocence was sufficient to constitute reversible error. And these closing arguments were egregious, I submit to your honors, and far beyond any proper comments by the prosecutor. Regarding the reasonable doubt and the fact that Mr. Poole was apprehended with a gun in his possession, that's true. Mr. Poole testified at trial that he was at Ashley House the whole day, Misty Lane's house the whole day, working on the farm, and that Middendorff and Jones came over to the farm and, with stolen property, he bought a gun off them and went with them. Misty Lane and the other witness, Ashley Pegg, testified that Middendorff and Jones came to the farm and they testified that they saw Poole looking into Middendorff's trunk as if they were looking at some items. So the other eyewitnesses corroborated the claim that Mr. Poole obtained the gun from Middendorff and Jones when they brought her over to the farm later that day. You don't dispute the State's argument about Mr. Yalali not being able to identify the defendant from the photo because of the difference in the hair? I do not dispute that Mr. Yalali testified to your argument. Are there any other questions? No, thank you very much both of you for your arguments and your briefs. We'll take this matter under advisement.